## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KATRINA HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-cv-02484-LKG |
| | ) | |
| v. | ) | January 13, 2025 |
| | ) | |
| S & K SECURITY CONSULTANTS, | ) | |
| INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION

### I.    INTRODUCTION

In this putative class action matter, the Plaintiff, Katrina Henderson, individually, and on behalf of all other similarly situated individuals, brings claims against the Defendants, S & K Security Consultants, Inc., ("S&K"), Jerry Swanson, and Debra Swanson (the "Swansons"), for failure to pay overtime compensation, pursuant to the Fair Labor Standards Act ("FLSA"), 29. U.S.C. § 201, *et seq*., Maryland Wage and Hour Law ("MWHL"), Md. Labor and Empl. Code Ann. § 3- 401, *et seq*., Maryland Wage Payment and Collection Law ("MWPCL"), Md. Labor & Empl. Code Ann. § 3-501, *et seq*., D.C. Minimum Wage Act Revision Act of 1992 ("DCMWA"), D.C. Code §§ 32-1001, *et seq*., and the D.C. Wage Payment and Wage Collection Act ("DCWPA"), D.C. Code §§ 32-1301, *et seq.*  ECF No. 1.  The Plaintiff has filed a motion for default judgment against Defendant S&K.  ECF No. 22. No hearing is necessary to resolve the motion. *See* L. R. 105.6 (D. Md. 2018). For the following reasons, the Court: (1) **GRANTS** the Plaintiff's motion for default judgment; (2) **ENTERS** a **DEFAULT JUDGMENT** in favor of the Plaintiff against S&K; (3) **AWARDS** the Plaintiff unpaid wages in the amount of **$26, 539.55**, pursuant to Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*; (4) **AWARDS** the Plaintiff liquidated damages in the amount of **$79,618.66**, pursuant to under the District of Columbia's Wage Payment and Collection Act, D.C. Code §§ 32-1301, *et seq*.; and (5) **AWARDS** the Plaintiff reasonable attorneys' fees and costs in an amount to be determined by the Court.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.    **Factual Background**

In this putative class action, the Plaintiff alleges that the Defendants failed to pay her and other of their employees overtime pay for hours worked in excess of 40 hours a week, in violation of the FLSA, MWHL, MWPCL, DCMWA and DCWPA.  ECF No. 1.  As relief, the Plaintiff seeks to recover: (1) compensation in the amount of $26,539.55 for overtime premium backpay, for the hours she worked in excess of 40 per workweek, including time spent performing work off-the-clock; (2) $79,618.66 in treble damages pursuant to DCWPCA; (3) post-judgment interest thereon, pursuant to 28 U.S.C. § 1961, and (4) attorneys' fees and costs. ECF No. 22-2 at 2.

<u>The Parties</u>

Plaintiff Katrina Henderson is a resident of Oxon Hill, Maryland and she worked for the Defendants in the position of Sergeant during the period October 2017 to June 6, 2021.  *Id*. at ¶¶ 11 and 12.

Defendant S&K is Maryland security services company located in Oxon Hill, Maryland. *Id*. at ¶ 15.

Defendant Jerry Swanson is a Maryland resident and the owner and President of S & K. *Id*. at ¶ 16.

Defendant Debra Swanson is a Maryland resident and the co-owner and principal of S & K.  *Id*. at ¶ 26.

<u>The Plaintiff's Work History And Allegations</u>

During the period October 2017 to June 6, 2021, the Plaintiff worked for the Defendants as a security guard in the position of Sergeant.  *Id*. at ¶ 12.  Plaintiff alleges that she and other security guards employed by the Defendants performed uncompensated work off the clock,

---

[1] The facts recited in this memorandum opinion are taken from the complaint and the Plaintiff's Declaration.  ECF Nos. 1 and 22-3.  Unless stated otherwise, the facts contained herein are undisputed.

including arriving to shifts early and traveling during the workday. *Id*. ¶ 3.  The Plaintiff also alleges that the Defendants paid her on an hourly basis for work performed. *Id*. at 3–4.

As background, Defendant S & K is a security services company that employed security guards predominantly in Maryland and Washington, D.C.  ECF No. 1 at ¶ 13.  The Plaintiff alleges that S & K is an enterprise whose annual gross volume of sales made, or business done, is not less than $500,000. ECF No. 1 at ¶ 39.  The Plaintiff also alleges that S & K is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s), because it has employees in commerce as well as employees handling settling, and otherwise working on goods or materials that have been moved in commerce. *See* ECF No. 1 at ¶ 40.

During the period October 2017 to June 6, 2021, the Plaintiff worked for S & K as a security guard in the position of Sergeant.  *See* ECF No. 1, ¶ 12. The Plaintiff alleges that she provided safety monitoring services for Defendant S & K's clients at the clients' place of business throughout Maryland and the District of Columbia. *See* ECF No. 1, ¶ 41. The Plaintiff also alleges that she was compensated by the Defendants on an hourly basis, at a rate of $15.00 per hour. *See* ECF No. 1, ¶ 14.

With regards to her work duties, the Plaintiff alleges that she worked at various locations during her employment with S&K, including the following locations: (a) AFT Credit Union (D.C.); (b) Counsel House (MD); (c) Riverside Apartments (MD); (d) Washington Overlook (D.C.); (e) The Wharf (D.C.); (f) Delta Towers (D.C.); and (g) Capital Crossing (D.C.). ECF No. 1 at ¶ 13; *see also* Declaration of Katrina Henderson ("Henderson Decl.") at ¶ 7.  In this regard, the Plaintiff alleges that she traveled between the various locations in Maryland and the District of Columbia using S & K's security vehicle.  *See* Henderson Decl. at ¶ 8.  The Plaintiff further alleges that she spent more than 50% of her time working in the District of Columbia.  *See* Henderson Decl. at ¶ 9.

In addition, the Plaintiff alleges that S & K determined her schedule and required her to perform her duties in accordance with certain guidelines, protocols, and training provided by Defendant S & K. *See* ECF No. 1 at ¶¶ 43-44.  In this regard, the Plaintiff alleges that she worked more than 40 hours during most workweeks, but, she did not receive overtime compensation for the hours worked in excess of 40 per week. *See* ECF No. 1 at ¶¶ 46, 47; *see* Henderson Decl., ¶ 10. The Plaintiff also alleges that, to the extent she was compensated for

hours worked in excess of 40 in a workweek, these overtime hours were compensated at her regular rate of pay (*i.e.*, "straight time"). ECF No. 1 at ¶ 47.

In addition, the Plaintiff contends that she performed uncompensated off-the-clock work, as required by S & K, which frequently occurred in excess of 40 hours in a workweek. ECF No. 1 at ¶ 48. Specifically, the Plaintiff alleges that S & K required that she arrive and begin her shifts early to relieve other security guards scheduled on the previous shift. *Id*. at ¶¶ 48 and 49. For example, the Plaintiff alleges that she was instructed by the Defendants to arrive 15 minutes before her scheduled shift, but was not compensated for such time. *See* Henderson Decl. at ¶ 16. The Plaintiff also alleges that she was not compensated for the time spent traveling from one work location to another during the workday, which the Plaintiff estimates to be approximately 30 additional minutes of work performed off-the-clock. *See* Henderson Decl. at ¶ 17. And so, the Plaintiff alleges that her unpaid off-the-clock time for arriving before her shifts and traveling between locations amount to a total of $5,518.13.

Lastly, the Plaintiff alleges that she typically worked seven days per week, Sunday through Saturday, and that she regularly recorded working 60 hours per workweek and 20 hours of overtime per workweek. *See* Henderson Decl. at ¶¶ 12 and 14. Because the Plaintiff worked for the Defendants from October 2017 to June 6, 2021, she contends that she worked 140 work weeks within the period covered by the applicable statutes of limitations, *i.e.* after September 29, 2018. The Plaintiff also alleges that she is entitled to an overtime premium in the amount of $7.50 and that her unpaid overtime premium backpay amount is $21,021.43. *See* Henderson Decl. at ¶ 4.

Given this, the Plaintiff contends she is owed approximately $24,962.95 in unpaid overtime compensation, not including liquidated damages, treble damages, attorneys' fees and costs, and any applicable interest as shown on the chart below.[2]

|  | Alleged Unpaid Time per Week | Half-Time Premium | Workweeks | Total |
|---|---|---|---|---|
| **Off-the-Clock Work** | 5.25 | $7.50 | 140.14 | $5,518.13 |

---

[2] Multiplying the regularly recorded overtime hours per week (20), plus the off-the-clock time performed, the number of weeks worked (approximately 140), and overtime premium ($7.50).

| | | | | |
|---|---|---|---|---|
| **Unpaid Overtime (Straight Time for Overtime)** | 20 | $7.50 | 140.14 | $21,021.43 |
| **Total** | | | | **$26,539.55** |

And so, the Plaintiff seeks to recover compensation in the amount of $26,539.55 for overtime premium backpay, for the hours she worked in excess of 40 per workweek, including time spent performing work off-the-clock; (2) $79,618.66 in treble damages pursuant to DCWPCA; (3) post-judgment interest thereon, pursuant to 28 U.S.C. § 1961, and (4) attorneys' fees and costs.

<u>Litigation And Procedural History</u>

On September 29, 2021, the Plaintiff filed the complaint.  ECF No. 1.  On November 4, 2021, Defendant S & K was served at its registered office located at 1818 New York Avenue NE, Suite 223, Washington, D.C. 20002, pursuant to Fed. R. Civ. P. 4.  ECF No. 6.

The applicable time limit for S & K to answer, or otherwise respond to this action, expired on November 29, 2021. ECF No. 6.  To date, S & K has not answered, or otherwise responded to the complaint.

On May 24, 2022, the Plaintiff filed an application for Clerk's entry of default against S & K, which the Clerk of the Court entered on January 30, 2023. ECF Nos. 11 and 16. On January 30, 2023, the Clerk also issued a Notice of Default to S & K advising that it had 30 days from January 30, 2023, to file a motion to vacate the order of default. *See* ECF No. 17.  The Notice of Default also advised that, if S & K did not take action on or before 30 days, the Court will act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against S & K. *See* ECF No. 17.

On February 13, 2023, S & K filed a response to the Notice of Default stating that it "never received any documents of any kind in reference to this filing" and that the business had closed in August 2021.  ECF No. 18. S & K did not answer, or otherwise respond to, the allegations in the complaint. *Id*.  And so, the Plaintiff filed a motion for default judgment on April 29, 2024.  ECF No. 22 and 22-1.

The Court resolves the pending motion for default judgment.

### III.    LEGAL STANDARDS

#### A.  Default Judgment

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant a default judgment, the Court takes as true the well-pled factual allegations of the complaint, other than those pertaining to damages.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  In this regard, the Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context.  *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  And so, where a petition avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Russell v. Railey*, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of facts that 'show' why those conclusions are warranted.").

Upon a finding that the plaintiff has established liability, the Court must independently determine the appropriate amount of damages.  *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).  The Court must do so "because 'an allegation relating to the amount of damages is not deemed admitted based on a defendant's failure to deny in a required responsive pleading.'"  *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (quoting *Hartford Fin. Servs. Grp. v. Carl J. Meil, Jr., Inc.*, 2011 WL 1743177, at *7 (D. Md. May 5, 2011)).

### B. The FLSA

Congress enacted the Fair Labor Standards Act to protect workers from poor wages and long hours that can result from substantial inequalities in bargaining power between employers and employees. *See* S. Rep. No. 884, at 3-4 (1937); H.R. Rep. No. 1452, at 9 (1937); *see also Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 407 (D. Md. 2014); *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). The FLSA requires an employer to pay each employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce" not less than a minimum wage. 29 U.S.C. § 206(a).

The FLSA also provides that "no employer shall employ" a covered employee in excess of 40 hours in a week unless the employee is paid "at a rate not less than one and one-half times the regular rate at which [s]he is employed" for each additional hour worked. *Id*. § 207(a)(1). In general, a two-year statute of limitations applies to the recovery of back wages and liquidated damages under the FLSA. *Id*. § 261(d). But this limitations period can be extended to three years in cases involving willful violations. *Id*.

Upon a finding of an employer's liability, the FLSA allows a covered employee to recover "[her] unpaid minimum wages, or [her] unpaid overtime compensation, as the case may be." *Id*. § 216(b). When seeking damages in cases where wage and pay records are not available, a plaintiff must offer evidence that allows for a "just and reasonable inference" of the compensation she is owed. *Sankoh v. Gold Street Cap. Fund*, 2018 WL 1709115, at *4 (D. Md. Apr. 6, 2018) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)). If an employee testifies as to her recollection of hours worked and pay received, and the Court deems the testimony credible, such evidence is sufficient to establish a *prima facie* case of wages owed. *Lopez v. Lawns 'R' Us*, 2008 WL 2227353, at *3 (D. Md. May 23, 2008).

In addition to payment for unpaid wages, an employer who has violated the FLSA is liable to the employee "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But liquidated damages may be withheld notwithstanding an employer's violation of the FLSA, if the employer presents evidence that it acted in good faith and on reasonable grounds that its actions complied with the FLSA. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

Relevant to this dispute, an "employer" within the context of the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29

U.S.C. § 203(d).  The statute also generally defines an employee as "any individual employed by an employer."  *Id*. § 203(e)(1).  This Court has held that the FLSA's definition of employer is to be "interpreted broadly[,] to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations."  *Ergashov v. Glob. Dynamic Transp., LLC*, 2015 WL 13229505, at *5 (D. Md. Nov. 13, 2015), *aff'd* 680 F. App'x 161 (4th Cir. 2017).  The Fourth Circuit has also instructed that, when determining whether the defendant in a FLSA case is an employer, the Court should review the "economic realities" of the worker's relationship with her putative employer.  *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).  And so, the Court considers "whether the worker 'is economically dependent on the business to which [s]he renders service or is, as a matter of economic reality, in business for [her]self.'"  *Id*. (quoting *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (cleaned up).

In this regard, courts regularly assess the following six economic reality factors to determine whether an individual is an employee or independent contractor under the FLSA: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunity for profit or loss dependent on her own managerial skill; (3) the worker's investment in equipment or material, or her employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.  *Id*. at 304-05 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000).  While no one element of this test is dispositive, "[t]he overarching concern is whether [the defendant] possessed the power to control the worker[] in question."  *Sama v. Turning Point, Inc.*, 2024 WL 112030, at *4 (D. Md. Jan. 10, 2024) (quoting *Prusin v. Canton's Pearls, LLC*, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017)).

### C.  Maryland Wage Laws

The Maryland Wage and Hour Law's requirements mirror those of the FLSA and similarly mandate that an employer pay non-exempt employees at least minimum wage for all hours worked.  Md. Code Ann. Lab. & Empl. § 3-413(b); *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).  As the "state parallel'" to the FLSA, the pleading requirements for an MWHL claim are the same as those for a FLSA suit.  *Clancy*, 2012 WL 5409733, at *3.  And so, the Court analyzes a plaintiff's employee status under both the MWHL

8

and FLSA by applying the six-factor "economic realities" test set forth in *Schultz*. *See, e.g., Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 569 (D. Md. 2014); *Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 458-59 (D. Md. 2000).

The Maryland Wage Payment and Collection Law requires that employers "pay each employee at least once in every [two] weeks or twice in each month." Md. Code Ann., Lab. & Empl. § 3-502(a)(1)(ii). Under the MWPCL, employers are required to pay an employee's wages for all work performed, before the termination of employment, either on or before the day on which the employee would have been paid had the employee not been terminated. *Id*. § 3-505; *Hoffman v. First Student, Inc.*, 2009 WL 1783536, at *10 (D. Md. June 23, 2009). As with the FLSA and the MWHL, an employee pursuing an MWPCL claim must demonstrate that an employee-employer relationship existed with her purported employer. *Sankoh*, 2018 WL 1709115, at *2. Maryland applies the Fourth Circuit's joint employer framework, as codified in *Salinas*, to MWPCL analyses. *McCoy v. Transdev Servs., Inc.*, 2022 WL 951996, at *15 (D. Md. Mar. 30, 2022). In addition, the MWPCL allows for the recovery of triple the amount of unpaid wages as damages. *Clancy*, 2012 WL 5409733, at *7. "[A] plaintiff may be 'entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both.'" *McCoy*, 2022 WL 951996, at *15 (quoting *Quiroz v. Wilhelp Com. Builders, Inc.*, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011).

### D. District Of Columbia Wage Laws

The DCMWA defines the term "employer" to include ". . . any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee . . ." D.C. Code § 32-1002(3). The DCWPA defines ab employer to include "every individual . . . employing any person in the District of Columbia . . ." D.C. Code § 32-1301(1B*); see also Moreno v. A. Wash & Assocs*., 2020 D.C. Super. LEXIS 19, *59 (holding an individual defendant liable as an employer under both the DCMWA and the DCWPA).[3] The DCWPA provides that an employer who does not pay wages "shall pay, or be additionally liable to, the employee, as liquidated damages, . . . an amount equal to treble the unpaid wages." *See* D.C.

---

[3] District of Columbia law provides that a person shall be employed in the District of Columbia when the person regularly spends more than 50% of their working time in the District of Columbia. See D.C. Code § 32-1003(b)(1).

Code § 32-1303(4). "[T]reble damages are mandatory, not discretionary, if requested." *Sivaraman v. Guizzetti & Assocs., Ltd*., 228 A.3d 1066, 1072 (D.C. 2020). The DCWPCA similarly provides that a delinquent employer may be liable to an employee for "(i) the payment of any back wages unlawfully withheld; (ii) [l]iquidated damages equal to treble the amount of unpaid wages; (iii) [s]tatutory penalties; and (iv) [s]uch legal or equitable relief as may be appropriate, including reinstatement of employment, and other injunctive relief." *Tirado v. Express Home Sols., L.L.C*., 2022 U.S. Dist. LEXIS 135580, at *9-10 (D.D.C. July 29, 2022)(citing D.C. Code § 32-1308(a)(1)(A).

### E. Attorneys' Fees

Lastly, the Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The lodestar amount is defined as a "'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp.*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see De La Cruz v. Chopra*, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (noting that the lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate"). "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check." *Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at *8 (D. Md. May 28, 2021); *see also Starr v. Credible Behavioral Health, Inc.*, 2021 WL 2141542, at *5 (quoting *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("In the Fourth Circuit, 'the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorneys' fees' in class actions.").

## IV.    LEGAL ANALYSIS

### A. The Plaintiff Has Shown That S & K Was Her Employer

As an initial matter, the Court is satisfied that the Plaintiff was an employee of S & K as contemplated by the FLSA. To prevail on her FLSA claim, the Plaintiff must show, among other things, that S & K was her employer. An "employer" within the context of the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."

29 U.S.C. § 203(d).  The FLSA statute also generally defines an employee as "any individual employed by an employer."  *Id*. § 203(e)(1).

The MWHL has a similar definition of "employer," which includes any "person who acts directly or indirectly in the interest of another employer with an employee." Md. Code Ann., Lab. & Empl. § 3-401.  The MWPCL's defines an employer "any person who employs an individual in the State or a successor of the person." *Id*. § 3-501(b).  This Court has held that the FLSA's definition of employer is to be "interpreted broadly[,] to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations." *Ergashov v. Glob. Dynamic Transp., LLC*, 2015 WL 13229505, at *5 (D. Md. Nov. 13, 2015), *aff'd* 680 F. App'x 161 (4th Cir. 2017).  The Fourth Circuit has also instructed that, when determining whether the defendant in a FLSA case is an employer, the Court should review the "economic realities" of the worker's relationship with her putative employer.  *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).  And so, the Court considers "whether the worker 'is economically dependent on the business to which [s]he renders service or is, as a matter of economic reality, in business for [her]self.'" *Id*. (quoting *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (cleaned up).

Courts regularly assess the following six economic reality factors to determine whether an individual is an employee or independent contractor under the FLSA: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunity for profit or loss dependent on her own managerial skill; (3) the worker's investment in equipment or material, or her employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.  *Id*. at 304-05 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000).  While no one element of this test is dispositive, "[t]he overarching concern is whether [the defendant] possessed the power to control the worker[] in question."  *Sama v. Turning Point, Inc.*, 2024 WL 112030, at *4 (D. Md. Jan. 10, 2024) (quoting *Prusin v. Canton's Pearls, LLC*, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017)).

In this case, the Plaintiff has shown that S & K was her employer within the meaning of the FLSA, MWHL, and  MWPCL.  The facts before the Court show that S & K, through its officers and owners, Jerry Swanson and Debra Swanson, had significant control over the manner

in which the Plaintiff's work was performed.  Notably, the evidence shows that S & K  hired the Plaintiff, set her rate of pay, determined the Plaintiff' work hours, determined the frequency of her pay, assigned the Plaintiff work, set her work schedule and maintained the Plaintiff's employment records. *See* ECF No. 1, at ¶¶ 15-35.  The evidence before the Court also shows that the security guard services performed by the Plaintiff were an integral part of S & K's security business. *See* ECF No. 1 at ¶¶ 14 and 41. (Plaintiff provided safety monitoring services for Defendant S & K's clients at the client's place of business throughout Maryland and the District of Columbia and she was compensated by the Defendants on an hourly basis, at a rate of $15.00 per hour.).

The evidence before the Court also makes clear that S & K employed the Plaintiff within the State of Maryland.  ECF No. 1 at ¶ 13 (S & K is a security services company that employed security guards predominantly in Maryland and Washington, D.C.). And so, accepting the well-pled factual allegations in the complaint as true, along with the facts provided in the Plaintiff's uncontroverted sworn affidavit, the Court is satisfied that the Plaintiff has shown that S & K was her employer within the meaning of the FLSA, MWHL and MWPCL.

### B.  The Plaintiff Has Shown That S & K Engaged In Interstate Commerce

The evidence before the Court also shows that S & K is an enterprise that is engaged in commerce.  Under Section 207 of the FLSA, the FLSA's overtime coverage applies in two scenarios: (1) individual coverage, which applies to any employee "who in any workweek is engaged in commerce or in the production of goods for commerce . . ." and (2) enterprise coverage, which applies to any employer that is "an enterprise engaged in commerce or in the production of goods for commerce ...."  29 U.S.C. § 207(a)(1).  In this regard, the FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). The FLSA also defines "enterprise engaged in commerce" as an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).  In this regard, the Fourth Circuit has held that a business falls within the FLSA, even when its activities occur only locally, "when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce." *Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir. 1989) (per curiam).

 Here, the Plaintiff alleges in the complaint that she performed security guard services for S & K's clients in Maryland and in the District of Columbia.  ECF No. 1 at ¶¶ 13, 42.  The Plaintiff also alleges that she utilized a vehicle provided by S & K to drive between Maryland and the District of Columbia to perform her duties.  *Id*. at 41 and 42; *see also* Henderson Declaration at ¶¶ 7, 8. And so, the Plaintiff has shown that she engaged in commerce while employed by S & K.

 In addition, the Plaintiff alleges that S & K has annual gross volume of sales made, or business done, that is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).  ECF No. 1.  And so, the factual allegations before the Court, taken as true, show that S & K is an enterprise that has, or had employees, that are engaged in commerce between the State of Maryland and the District of Columbia.  29 U.S.C. § 203(b).

### C.  The Plaintiff Has Shown She Is Entitled To Recover The Requested Damages

 The evidence before the Court also shows that the Plaintiff is entitled to the amount of damages that she seeks to recover in this matter.  The factual allegations in the complaint, and pay records submitted by the Plaintiff, show that S & K compensated the Plaintiff at the rate of $15.00 per hour.  ECF No. 1; *see also* Pl. Exs. 4 and 5.  The Plaintiff alleges in the complaint that she regularly worked on average 60 hours per workweek, thereby working 20 hours of overtime per workweek, during the period of her employment with S & K.  *See* ECF No. 1 at ¶¶ 46-52; *see also* Henderson Decl. at  ¶ 14; Pl. Exs. 4 and 5. The evidence before the Court also shows that the Defendants were aware of the Plaintiff's over-time hours, because these hours are reflected and recorded on the Plaintiff's paystubs.  *See* Pl. Exs. 4 and 5.

 Pursuant to the FLSA, the Plaintiff is entitled to receive an overtime premium at 1.5 times her regular rate of pay for hours worked in excess of  40 in a workweek for each hour over 40 that she worked.   But, the Plaintiff alleges, and her pay records show, that S & K failed to properly compensate her for this overtime work.  The Plaintiff has also show that, to the extent that she was compensated for hours work in excess of 40 hours per workweek, she received straight time pay for this overtime.  Given this, the evidence before the Court shows that the

Plaintiff is entitled to receive an overtime premium pay for the approximately 20 hours of overtime she worked each workweek.[4] And so, the Plaintiff has shown that the total amount of her unpaid overtime wages, including straight time paid *in lieu* of overtime and off-the-clock work performed, is **$25,225.71**. *See Gaither v. Davi Transportation Services, LLC*, 2020 WL 2614783, at *7 (D. Md. 2020)( An employee's statement under oath as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed.").[5]

As a final matter, the Plaintiff has also shown that she is entitled to relief under the DCMWA and DCWPA for S & K's failure to properly compensate her for overtime worked. Under the DCMWA, an "employer" is "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee . . ." D.C. Code § 32-1002(3). The DCWPA defines an employer to include "every individual . . . employing any person in the District of Columbia . . ." D.C. Code § 32-1301(1B). Under District of Columbia law, a person shall be employed in the District of Columbia when the person regularly spends more than 50% of their working time in the District of Columbia. *See* D.C. Code § 32-1003(b)(1).

As discussed above, the evidence before the Court shows that S & K, hired Plaintiff, set her rate of pay, determined the Plaintiff' work hours, determined the frequency of her pay, assigned Plaintiff work, set her work schedule and maintained the Plaintiff's employment records. *See* ECF No. 1 at ¶¶ 15-35. The evidence before the Court also makes clear that S & K employed the Plaintiff within the District of Columbia. ECF No. 1 at ¶ 13 (S & K is a security services company that employed security guards predominantly in Maryland and Washington, D.C.). The facts also show that the Plaintiff satisfies the criteria for an individual employed in the District of Columbia, because she spent more than 50% of her time working for S & K in the District of Columbia. *See* Henderson Decl. at ¶ 9. And so, accepting the allegations in the complaint as true, along with the facts provided in the Plaintiff's uncontroverted sworn affidavit,

---

[4] The facts before the Court show that the Plaintiff was not exempt from the overtime provisions of the FLSA and she was an employee of S & K, rather than an independent contractor. *See* ECF No. 1.

[5] For these same reasons, the Plaintiff has also shown that she is entitled to recover liquidated damages under the FLSA in amount equal to her unpaid overtime wages, **$50,451.43**. *See* 29 U.S.C. § 216(b)(In addition to payment for unpaid wages, an employer who has violated the FLSA is liable to the employee "in an additional equal amount as liquidated damages.").

the Court is satisfied that the Plaintiff has also shown that S & K was her employer within the meaning of the DCMWA And DCWPA.

Under the DCWPA, an employer who does not pay wages "shall pay, or be additionally liable to, the employee, as liquidated damages, . . . an amount equal to treble the unpaid wages." *See* D.C. Code § 32-1303(4). Such "treble damages are mandatory, not discretionary, if requested." *Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1072 (D.C. 2020). The DCWPA also provides that a delinquent employer may be liable to an employee for "(i) the payment of any back wages unlawfully withheld; (ii) [l]iquidated damages equal to treble the amount of unpaid wages; (iii) [s]tatutory penalties; and (iv) [s]uch legal or equitable relief as may be appropriate, including reinstatement of employment, and other injunctive relief." *Tirado v. Express Home Sols.*, L.L.C., 2022 U.S. Dist. LEXIS 135580, at *9-10 (D.D.C. July 29, 2022) (citing D.C. Code § 32-1308(a)(1)(A). And so, in addition to **$26,539.55** in unpaid overtime wages owed to the Plaintiff pursuant to the FLSA, the Plaintiff has shown that she is also entitled to recover liquidated damages in the amount of **$79,618.66** under the District of Columbia's wage-and-hour laws (*i.e.*, 3 x $26,539.55 in unpaid wages).

### D.    The  Plaintiff Has Established Entitlement To A Default Judgment

Having determined that the Plaintiff is entitled to recover her unpaid wages and liquidated damages from S & K, the Court next considers as a final matter whether entry of a default judgment against the S & K is appropriate in this case. Rule 55(b) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the Court may enter default judgment at a party's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). And so, the Court may enter default judgment against S & K , if she seeks a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1).

The litigation history of this case makes clear that S & K has failed to plead, or otherwise defend itself, in this civil action. The summons and complaint were properly served on S & K more than three years ago, on  November 4, 2021. ECF No. 6. But, to date, S & K has neither answered, nor otherwise responded to, the complaint. Given this, the Plaintiff filed a motion for Clerk's entry of default on May 24, 2022, which the Clerk granted on January 30, 2023. ECF Nos. and 11 and 16. Thereafter, the Plaintiff filed the pending motion for default judgment,

which S & K has also failed to respond to.  ECF No. 12.  And so, entry of a default judgment against S & K is warranted and appropriate in this case.  Fed. R. Civ. P. 55(b).

**V.    CONCLUSION**

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiff's motion for default judgment;

(2) **ENTERS** a **DEFAULT JUDGMENT** against S&K;

(3) **AWARDS** the Plaintiff unpaid wages in the amount of **$26, 539.55**, pursuant to Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*; and

(4) **AWARDS** the Plaintiff liquidated damages in the amount of **$79,618.66**, pursuant to the District of Columbia's Wage Payment and Collection Act, D.C. Code §§ 32-1301, *et seq.*.

(5) The Court's **JUDGMENT** shall accrue post-judgment interest from the date of entry at the rate specified in 28 U.S.C. § 1961;

(6) The Plaintiff is awarded her reasonable attorneys' fees and costs in an amount to be determined by the Court. The Plaintiff shall file a petition for attorneys' fees and costs no later than fourteen (14) days from the date of this Order.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge